NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| **RP BAKING LLC,** : | |
| : | |
| : | Civil Action No. 10-3819 (ES) |
| **Plaintiff,** : | |
| : | |
| : | |
| v. : | |
| : | |
| **BAKERY DRIVERS AND** : | **OPINION** |
| **SALESMEN LOCAL 194 AND** : | |
| **INDUSTRY PENSION FUND and its** : | |
| **TRUSTEES,** : | |
| : | |
| **Defendants.** : | |
| : | |

Pending before this Court is a Motion by Plaintiff RP Baking LLC ("Plaintiff") to dismiss Defendants Bakery Drivers and Salesmen Local 194 and Industry Pension Fund and its Trustees ("Defendants") counterclaim for withdrawal liability and delinquent interest. Having considered the parties' submissions, the Court **GRANTS** Plaintiff's motion to dismiss without prejudice with leave to amend.

**I.   PROCEDURAL AND FACTUAL BACKGROUND**

Plaintiff is an employer as defined by the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 141 et. seq., and the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 3001 et seq. *See* Complaint dated July 29, 2010, Docket Entry No. 1 (the "Complaint") at ¶ 1. In June 2006, Plaintiff purchased assets from Pechter's Baking Group, L.L.C. ("Pechter's") and agreed to assume Pechter's collective bargaining agreement with Bakery Drivers and Salesmen Local

194 (the "Union"). *Id.*, Exhibit A.[1] Plaintiff then began to contribute to the Union's Pension Fund (the "Fund") on behalf of its employees covered by the collective bargaining agreement assumed from Pechter's. *Id.* at ¶ 8.

Two years later, in October 2008, Plaintiff ceased making contributions to the Fund, constituting a complete withdrawal as defined in ERISA. *Id.* at ¶ 10. On January 6, 2010, the Fund demanded payment from Plaintiff for its own withdrawal liability and for Pechter's withdrawal liability based on Plaintiff's purchase of Pechter's assets in 2006. *Id.* at ¶ 11, Exhibit C (the "Demand Letter"). In the Demand Letter, the Fund informed Plaintiff that it had demanded that Pechter's pay its own withdrawal liability but that Pechter's had failed to do so. *See id.* Therefore, the Fund asserted that Plaintiff must pay Pechter's withdrawal liability, as the successor to Pechter's. *See id.*

On February 22, 2010, in accordance with Section 4219(a)(2) of ERISA, Plaintiff requested that the Fund review its determination of Plaintiff's withdrawal liability. *Id.* at ¶ 12, Exhibit D. On May 21, 2010, the Fund responded to Plaintiff's request, denying the request for review. *Id.* at ¶ 13, Exhibit E. Plaintiff then attempted to initiate arbitration on July 23, 2010, the timeliness of which Defendants dispute. *Id.* at ¶ 14, Exhibit F; Answer and Counterclaim dated September 1, 2010, Docket Entry No. 7 (the "Answer") at ¶ 14.

Six days later, on July 29, 2010, Plaintiff initiated this lawsuit seeking a declaratory judgment that it should not be held liable for Pechter's withdrawal liability. *See* Complaint, Count I. Defendants answered and counterclaimed for judgment against Plaintiff for, among other things,

---

[1] The Court notes that the Complaint states that Plaintiff purchased the assets in June 2006 but the Asset Purchase Agreement attached to the Complaint at Exhibit A is dated May 2006. The Court is reciting the facts as written in the Complaint.

Pechter's withdrawal liability and for interest on delinquent withdrawal liability payments based on Plaintiff's withdrawal liability (the "Counterclaim"). *See generally* Answer. Plaintiff then filed the instant motion seeking to dismiss the Counterclaim.

## II.     LEGAL ANALYSIS

### A.     Legal Standard

A complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). On a motion to dismiss, the Court must accept as true all of the factual allegations in the complaint, and draw all reasonable inferences in favor of the plaintiff. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). The Court generally "may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). Moreover, when considering the sufficiency of the pleading, Fed. R. Civ. P. 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." While Rule 8 does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, ___ U.S. ___, ___, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (internal citations and quotations omitted).

Here, Plaintiff argues that it is not liable for Pechter's withdrawal liability because it was not an employer as defined in ERISA on or before Pechter's June 2006 withdrawal. Specifically, Plaintiff argues that the Court can only find that Plaintiff was an employer if the Court utilizes the doctrine of successor liability based on Plaintiff's purchase of Pechter's assets. In other words, Plaintiff does not believe it should stand in the shoes of Pechter's and be liable for Pechter's withdrawal liability merely because Plaintiff purchased Pechter's assets. *See generally* Plaintiff's Motion to Dismiss (Docket Entry No. 10, "Plaintiff's Brief"), Section III.B.

In support thereof, Plaintiff argues that (1) although it has not ruled on the issue, the Third Circuit would not agree that successor liability is appropriate in the context of withdrawal liability and (2) even if it did, Defendants fail to properly plead the elements of the Counterclaim. Plaintiff also argues that Defendants cannot state a claim for interest on Plaintiff's alleged delinquent withdrawal liability payments. *See id.* In opposition, Defendants argue that the Court should utilize the doctrine of successor liability and that it has properly pled the Counterclaim. In the alternative, if necessary, Defendants request leave to amend the Counterclaim. *See* generally Defendant/Counterclaimants' Brief in Opposition to Plaintiff/Counter-Defendant's Motion to Dismiss Defendants' Counterclaim (Docket Entry No. 15, "Defendants' Opposition").

### B. Successor Liability

ERISA is designed "to protect plan participants and their beneficiaries." *Einhorn v. M.L. Ruberton Constr. Co. (Einhorn II),* 632 F.3d 89, 96 (3d Cir. 2011) (internal citations omitted). The Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA") addresses "the adverse consequences that result when individual employers terminate their participation or withdraw from multiemployer pension plans." *Id*. (citing *Supervalu, Inc. v. Board of Trustees, et al.*, 500 F.3d 334, 336 (3d Cir. 2007)). The MPPAA requires an employer who withdraws from a multiemployer pension plan to pay withdrawal liability, which represents the fund's "unfunded vested benefits." 29 U.S.C. §§ 1381, 1382 (3), 1399(b)(1)(B). The plan sponsor first determines if the employer has withdrawn. 29 U.S.C. § 1381. Next, the plan sponsor will notify the employer of the amount of the alleged withdrawal liability. 29 U.S.C. §§ 1382 (2), 1399(b)(1)(A)(i). After such notification, within ninety days, the employer may seek a review of the amount. 29 U.S.C. § 1399(b)(2)(A)(i). If any dispute remains, either party may initiate arbitration. 29 U.S.C. § 1401(a)(1). If neither party

initiates arbitration, then the amounts immediately become due and owing and subject to collection. 29 U.S.C. § 1401(b)(1).

In certain circuits, a purchaser of assets can be liable for the seller's liability (including withdrawal liability) to a pension fund where the purchaser had notice of the liability and there is "sufficient evidence of continuity of operations between the buyer and the seller." *Einhorn II*, 632 F.3d at 99. This theory of liability is known as successor liability. The crux of the dispute between the parties is whether the Third Circuit would adopt the theory of successor liability. At the time the parties briefed this issue for the Court, the Third Circuit had not ruled on this issue. Therefore, the parties relied upon three decisions: (1) *Upholsters' Internat'l Union Pension Fund v. Artistic Furniture of Pontiac*, 920 F.2d 1323 (7th Cir. 1990) (adopting the doctrine of successor liability in the context of delinquent pension fund contributions); *Einhorn v. M.L. Ruberton Constr. Co. (Einhorn I)*, 665 F.Supp.2d 463 (D.N.J. 2009) (finding successor liability not applicable in the context of delinquent pension fund contributions); and *Central Penna Teamsters Pension Fund v. Bear Distrib. Co., Inc.*, Civil Action No. 07-3554, 2009 U.S. Dist LEXIS 26481, (E.D. Pa. Mar. 26, 2009) (adopting successor liability) to argue whether the Court should adopt the theory of successor liability.

Since that time, the Third Circuit has addressed this issue and has agreed with the Seventh Circuit finding that "the federal policies underlying ERISA and the [MPPAA] 'are no less important, and no less compel the imposition of successor liability than do the policies animating the NLRA, Title VII,' or the other statutes to which the doctrine has been extended." *Einhorn II*, 632 F.3d at 96 (internal citations omitted). While *Einhorn II* deals with the issue of successor liability in the context of delinquent payments, the Third Circuit favorably cited a District of Utah case which

permitted successor liability in the context of withdrawal liability. *See Trs. of the Utah Carpenters' & Cement Masons' Pension Trust v. Daw, Inc.*, No. 2:07-CV-87 TC, 2009 WL 77856, at *3 (D. Utah Jan. 7, 2009). As such, the Court finds that Defendants can seek to hold Plaintiff liable for Pechter's withdrawal liability under a theory of successor liability.

### C.  Adequacy of the Pleading

Because the Court finds that Defendants may base the Counterclaim on the doctrine of successor liability, the Court will now turn to Plaintiff's contention that Defendants have failed to adequately plead the Counterclaim. To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), Defendants must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* As such, the Court can consider legal conclusions to provide "the framework of a complaint," but "they must be supported by factual allegations." *Id.* at 1950.

Here, Defendants must adequately plead that Plaintiff had (1) notice of the withdrawal liability and (2) there is sufficient continuity of operations between the two entities. *Einhorn II*, 632 F.3d at 99. Plaintiff argues that Defendants do not properly plead that Plaintiff had notice of Pechter's withdrawal liability and that the facts supporting the allegations of continuity of operations are improperly based "upon information and belief." *See* Plaintiff's Brief at 11 - 12.

The Court finds that Defendants have not adequately pled a claim for successor liability to withstand a motion to dismiss. While the Court finds that Defendant has pled adequate facts to support the continuity of operations factor (*see* Counterclaim at ¶ 19), the Court finds that Defendants have not pled any facts to support its contention that Plaintiff had notice of Pechter's

withdrawal liability.[2] Defendants merely pled that Plaintiff had "prior notice of the possibility of Pechter's withdrawal liability" without further factual support. *See id.* Although Defendants pled that Plaintiff had knowledge of Pechter's obligations under the collective bargaining agreement, it did not specifically tie those obligations to withdrawal liability to give Plaintiff fair notice of the support for its claims. *See id.* Finally, although the Court agrees that Plaintiff's disclaimer of such liability is relevant, the Court cannot find where Defendants pled those facts in the Counterclaim. Therefore, the Court will dismiss Defendants' counterclaim without prejudice with leave to amend. Defendants may amend the Counterclaim within 30 days.[3]

## III . CONCLUSION

For the reasons set forth above, the Court grants Plaintiff's Motion to dismiss without prejudice with lead to amend. The Court will issue an appropriate Order.

s/ Esther Salas
**ESTHER SALAS**
**UNITED STATES DISTRICT JUDGE**

---

[2] Plaintiff does not cite to any cases which stand for the proposition that Defendants cannot base its allegations "upon information and belief." The Court finds the allegations sufficient to put Plaintiff on notice of the facts underlying the continuity of operations factor. *See Marketvision/Gateway Research, Inc. v. Priority Pay Payroll, LLC*, Civil Action No. 10-1537, 2011 U.S. Dist. LEXIS 46767, at *9 (D.N.J. May 2, 2011) (finding that a "party need not have evidentiary support in order to allege a fact in the Complaint" and accepting allegations based on information and belief) (internal citations omitted).

[3] The Court notes that Plaintiff also seeks to dismiss the portion of Defendants' Counterclaim which deals with delinquent interest. Because the facts in the Counterclaim are intertwined, the Court will not rule with respect to the claim for delinquent interest and will request that the Defendants separate the causes of action in the amended pleading for clarity.